**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| BRUCKNER TRUCK SALES, INC. | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:17-cv-204 |
| | ) | |
| | ) | |
| BAYOU DIESEL SERVICES, LLC | ) | |
| and | ) | |
| REGAN PRICE, INDIVIDUALLY | ) | |
| *Defendants* | ) | |

**<u>DEFENDANT REGAN PRICE'S BRIEF IN RESPONSE TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION</u>**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      Choice of Law and Forum Selection Clauses are Null and Void and Louisiana Law
        Should Govern the Employment Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Non-Competition and Non-Solicitation Clauses in the Employment Agreement are
        Unenforceable Under Louisiana Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    Reformation is Necessary Under Texas Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.     No Irreparable Harm for Hiring Former Employees. . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.      No Injunction Should Be Entered Against Defendant Bayou Diesel. . . . . . . . . . . . . . . 20

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# <u>TABLE OF AUTHORITIES</u>

### CASES

*Aon Risk Services of Louisiana, Inc. v. Ryan,* 01-0614 (La. App. 4 Cir. 1/23/02), 807 So.2d 1058 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Baton Rouge Computer Sales, Inc. v. Miller-Conrad,* 99-1200 (La. App. 1 Cir. 5/23/00), 767 So.2d 763. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Bell v. Rimkus Consulting Group, Inc. of La*., 07-996 (La. App. 5 Cir. 03/25/08); 983 So. 2d 927 . . . . . . . . . . . . . . . . . . . .. . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787 (Tex. App.—Houston [1st Dist.] 2001, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . 14

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 19

*Cadman v. Bond*, 603 F. Supp. 1335 (D. Mass. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .... 21

*Cardinal Health Staffing Network v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cardoni v. Prosperity Bank*, 805 F.3d 573 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3, 4, 5

*Cellular One, Inc. v. Boyd*, 94-1783 (La. App. 1 Cir. 3/3/95), 653 So.2d 30, 33, *writ denied,* 95-1367 (La. 9/15/95), 660 So.2d 449) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . 7

*Chrisman Mill Farms, LLC v. Blazer*, Civ. A. No. 5: 17-011-DCR, 2017 U.S. Dist. LEXIS 59579, at *8–*9 (E.D. Ky. Apr. 19, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... 21

*CMA-CGM (Am.), Inc. v. Empire Truck Lines, Inc.*, 416 S.W.3d 495 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . 3, 4

*Comet Industries, Inc. v. Lawrence*, 600 So. 2d 85 (La. App. 2 Cir.), writ denied, 604 So. 2d 1002 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Comet Industries, Inc. v. Colvin,* 600 So.2d 89 (La. App. 2 Cir. 1992) . . . . . . . . . . . . . . . . . . . . 10

*Creative Risk Controls, Inc. v. Brechtel*, 01-1150 (La. App. 5 Cir. 4/29/03), 847 So.2d 20, 25, *writ denied,* 03-1769 (La. 10/10/03), 855 So.2d 353 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... 7

*Custom Drapery Co. v. Hardwick*, 531 S.W.2d 160 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... 19

*Daiquiri's III on Bourbon, Ltd. v. Wandfluh,* 608 So. 2d 222 (La.App. 5 Cir. 1992), *writ denied,* 610 So. 2d 801 (La. 1993) . . . ………………………………………………………….. 10

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) . . . . .…………....…. . . . . . 3, 4

*Diversified Human Res. Grp., Inc. v. Levinson-Polakoff*, 752 S.W.2d 8 (Tex. App.—Dallas 1988, no writ) . . .……………………………………………………………………………….. 15

*Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 534-36 (Tex. App.—Dallas 2014, no pet.) . . . . .…………………………………………………………………....…. . . . . . . 4

*Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014), *reh'g denied* (Feb. 27, 2015) .……………………………………………………………………………………………..3, 5

*In re AutoNation, Inc.*, 228 S.W.3d 663, 669 (Tex. 2007) . . . . .…………………………. . . . . .3

*John R. Ray & Sons v. Stroman*, 923 S.W.2d 80 (Tex. App.—Houston [14th Dist.] 1996, writ denied) . .……………………………………………………………………….. 8, 17, 18

*Jon Bet & Associates v. Tyer,* 550 So.2d 673, 675 (2nd Cir. 1989)…………………………………..8

*Kimball v. Anesthesia Specialists of Baton Rouge, Inc.,* 00-1954 (La. App. 1 Cir. 9/28/01), 809 So.2d 405, 410, *writs denied,* 01-3316 (La. 3/8/02), 811 So.2d 883, and 01-3355 (La. 3/8/02), 811 So.2d 886) . .………………………………………………………………………… 7, 8

*LaFourche Speech & Language Services, Inc. v. Juckett,* 94-1809 (La.App. 1 Cir. 3/3/95), 652 So. 2d 679, *writ denied,* 95-0850 (La. 5/12/95), 654 So. 2d 351 . ……………………………. 9, 10

*Panatrol Corp. v. Emerson Elec. Co.*, 163 S.W.3d 182, 186-89 (Tex. App.—San Antonio 2005, pet. denied) . . . . . . . . . . .…………………………………………………………………….. 4

*Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991) . .…………… . 13, 17, 18

*Pelican Pub. Co. v. Wilson*, 626 So. 2d 721 (La. App. 5th Cir. 1993) . .………………………… 8

*Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711 (N.D. Iowa 2005)…………………………………… 21

*Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417 (S.D. Tex. 2008) . . .…………….. 14

*Summit Inst. for Pulmonary Med. and Rehabilitation, Inc. v. Prouty,* 29,829 (La.App. 2 Cir. 4/9/97), 691 So. 2d 1384, *writ denied,* 97-1320 (La. 9/26/97), 701 So. 2d 983 . . .……………. 10

*Turner Professional Services, Ltd. v. Broussard,* 99-2838 (La. App. 1 Cir. 5/12/00), 762 So.2d 184, 186, *writ denied,* 00-1717 (La. 9/29/00), 770 So.2d 356 . .………………………………… 7

*Vartech Sys. v. Hayden*, 2005-2499 (La. App. 1 Cir. 12/20/06) 951 So. 2d 247 . …………………………………………………………………………………………….7, 9

*U.S. Risk Ins. Grp., Inc. v. Woods*, 399 S.W.3d 295 (Tex. App.—Dallas 2013, no pet.) . . ….. 16

*Water Processing Tech. v. Ridgeway,* 618 So. 2d 533, 536 (La. App. 4 Cir. 1993) . …….. 7, 8, 9

*Wisconsin Ice & Coal Co. v. Lueth*, 250 N.W. 819, 820 (Tex. 1933) . …………………... 13, 17

*Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543 (3d. Cir. 1967) ………….. 21

## STATUTES

TEX. BUS. & COM. CODE § 1.301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TEX. BUS. & COM. CODE ANN. § 15.50. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 18

TEX. BUS. & COM. CODE ANN. § 15.51. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

La. R.S. § 23:921. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 9, 10

## OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 187(2) . . . . . . . . . . …………………………………… 4

Restatement (Second) of Conflict of Laws § 187(2) cmt. g . . . . . …………………………. . . . . 3

Restatement (Second) of Conflict of Laws § 188 . . . . . ……………………………… . . . . . 5

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| BRUCKNER TRUCK SALES, INC. | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:17-cv-204 |
| | ) | |
| | ) | |
| BAYOU DIESEL SERVICES, LLC | ) | |
| and | ) | |
| REGAN PRICE, INDIVIDUALLY | ) | |
| *Defendants* | ) | |

## DEFENDANT REGAN PRICE'S BRIEF IN RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

## STATEMENT OF THE CASE

Plaintiff Bruckner Truck Sales, Inc. seeks a preliminary injunction against Defendants Regan Price and Bayou Diesel Services, LLC, alleging that Regan Price is in breach of the restrictive covenants contained in the Employment Agreement by and between Defendant Price and Plaintiff.  Plaintiff also alleges that Defendant Bayou Diesel Services, LLC should be enjoined because it is the "alter-ego" of Defendant Regan Price.  Importantly, Defendant Bayou Diesel Services, LLC has made a Special Appearance objecting to personal jurisdiction which has not been referred to the instant Court.  For the reasons stated *infra*, Plaintiff's Motion as to Defendant Bayou Diesel Services, LLC cannot be considered and/or determined by this Honorable Court.

Defendant Regan Price contends that Plaintiff's Motion for Preliminary Injunction against him individually should be denied because the restrictive covenants contained in the Employment

1

Agreement are unenforceable and null and void for the following reasons: (1) the choice of law and forum selection clauses are null and void, (2) Louisiana law should govern the Employment Agreement, (3) the restrictive covenants are unenforceable under Louisiana law, (4) in the alternative, if Texas law governs, the restrictive covenants are overly broad and unenforceable as written and must be reformed, and finally (5) Plaintiff's cannot establish irreparable injury caused by Defendant Bayou Diesel Services, LLC's employment of certain former employees of Plaintiff. Therefore, Plaintiff's Motion for Preliminary Injunction should be denied.

## ARGUMENT AND AUTHORITY

## I.  CHOICE OF LAW AND FORUM SELECTION CLAUSES ARE NULL AND VOID AND LOUISIANA LAW SHOULD GOVERN THE EMPLOYMENT AGREEMENT

The fundamental question underlying the dispute in the instant matter is the enforceability of the Non-Competition and Non-Solicitation covenants contained within the Employment Agreement by and between[1] Regan Price ("Price") and Bruckner Truck Sales, Inc. ("Bruckner")(the "Agreement") in 2014. App'x 1. Within that Agreement, there is a choice of law and forum selection provision which states the following:

> This Agreement shall be governed by and construed in accordance with the laws of the state of Texas, applied without reference to principles of conflict of laws.  Any action relating to or arising under this Agreement must be brought in a court of competent jurisdiction within Potter County, Texas which will be the exclusive jurisdiction.

App'x 9.

While it has been decided by the Supreme Court of Texas that parties can agree to be governed by the law of another state, contractual choice-of-law provisions are not unassailable.

---

[1] The Agreement does not state the day or month of its Effective Date, and merely provides "2014." Further, no one executed the Agreement on behalf of Bruckner.  Regan Price did execute the Agreement, but the execution date is uncertain.

*Cardoni v. Prosperity Bank*, 805 F.3d 573 (5th Cir. 2015)(United States Court of Appeals for the Fifth Circuit holding that a choice of law provision in non-competition agreements between Oklahoma employees and a Texas employer selecting Texas as the governing law was unenforceable); citing *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014), *reh'g denied* (Feb. 27, 2015); *cf.* Tex. Bus. & Com. Code § 1.301(a).

Unlike arbitration and forum selection clauses, which dictate where a dispute will be heard, choice-of-law provisions dictate the law that will decide the dispute, and thus create more tension with a state's power to regulate conduct within its borders. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) (explaining that judicial respect for enforcing the contractual expectations of the parties is not unlimited when it comes to choice-of-law agreements because parties "cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply"); *see also In re AutoNation, Inc.*, 228 S.W.3d 663, 669 (Tex. 2007) (distinguishing choice-of-law provisions from forum selection clauses because there is no "fundamental Texas policy requir[ing] that every employment dispute with a Texas resident must be litigated in Texas"); Restatement (Second) of Conflict of Laws § 187(2) cmt. g ("Fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation.").

Thus, although Texas courts permit choice-of-law agreements and the default position is that they are enforceable, it is possible, and not uncommon, to overcome them. *Cardoni*, 805 F.3d at 580. *See also DeSantis*, 793 S.W.2d at 681 (holding parties' choice of Florida law unenforceable and applying Texas law to enforcement of noncompetition agreement); *CMA-CGM (Am.), Inc. v. Empire Truck Lines, Inc.*, 416 S.W.3d 495, 516-17 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding parties' choice of Maryland law unenforceable and applying Texas law to resident

3

motor carrier being required to indemnify for third-party's negligence); *Panatrol Corp. v. Emerson Elec. Co.*, 163 S.W.3d 182, 186-89 (Tex. App.—San Antonio 2005, pet. denied) (holding parties' choice of Missouri law unenforceable and applying Texas law to manufacturer's indemnification of innocent seller); *cf. Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 534-36 (Tex. App.—Dallas 2014, no pet.) (reversing summary judgment on grounds that genuine issue of material fact remained on whether parties' contractual choice of Texas law or another state's law should apply to question of enforceability of noncompetition provision).

To render a choice-of-law provision unenforceable, a party must satisfy the standards in Section 187(2) of the Restatement (Second) of Conflict of Laws, which provides that:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, **or**
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2)(emphasis added); *see also Cardoni*, 805 F.3d at 581 (5th Cir. 2015); *DeSantis*, 793 S.W.2d at 677-78.

While it is clear that Texas has a relationship to the parties—Bruckner is a Texas corporation—and there is a reasonable basis for Texas to be governing law, the analysis under Subsection (b) provides the standard for the choice of law provision in the Agreement to be unenforceable. Even when a reasonable basis exists for selecting a state as the source of law governing a transaction, the parties' selection does not control if another state: (1) has a more

4

significant relationship with the parties and the transaction at issue than the chosen state does under Restatement § 188; (2) has a materially greater interest than the chosen state does in the enforceability of a given provision; and (3) has a fundamental policy that would be contravened by the application of the chosen state's law. *Drennen*, 452 S.W.3d at 325-27; *see also Cardoni*, 805 F.3d at 582.

In the instant matter, Louisiana law should govern because it has a more significant relationship with the parties and the transaction at issue than the chosen state because: (1) Price is a resident, and always has been, of Louisiana, (2) the Agreement was executed in Louisiana, (3) the employment was in Louisiana, (4) the alleged incidents and alleged activities giving rise to Bruckner's claim occurred in Louisiana, (5) Bruckner's claim of irreparable harm affects its Monroe, Louisiana location; (6) the employees and customers at issue are located in Louisiana, and most importantly, (7) the injunctive relief sought by Bruckner would be enforced in Louisiana. Moreover, Louisiana has a fundamental policy that would be contravened by the application of the chosen state's law.  Non-competition and non-solicitation agreements are a matter of public policy under Louisiana law and are governed by La. R.S. § 23:921, which states in pertinent part:

> The provisions of ***every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void*** except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

La. R.S. § 23:921(A)(2)(emphasis added)[2].

---

[2] Price never agreed to or ratified the choice of law or forum selection clause, and adamantly disputes the clause as provided in this Brief.

Due to the fact that no exception under La. R.S. § 23:921(A)(2) exists in the instant matter, the choice of law and forum selection clauses are null and void. *Bell v. Rimkus Consulting Group, Inc. of La.*, 07-996 (La.App. 5 Cir. 03/25/08); 983 So. 2d 927 (holding that Louisiana has a longstanding public policy to prohibit or severely restrict non-competition provisions in employment agreements which curtail an employee's right to his earn his livelihood. These agreements are in derogation of the common right, and they must be strictly construed against the party seeking their enforcement and application of Texas law to this dispute would thwart Louisiana's longstanding public policy and interest in this type of matter.) Therefore, the choice of law provision dictating that Texas law should govern the interpretation and enforcement of the Agreement is null and void and Louisiana law should govern; furthermore, the forum selection clause dictating that any action—including but not limited to the arbitration—must be brought in Potter County, Texas is also null and void.[3]

## II. NON-COMPETITION AND NON-SOLICITATION CLAUSES IN THE EMPLOYMENT AGREEMENT ARE UNENFORCEABLE UNDER LOUISIANA LAW

Under Louisiana law, "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, ***shall be null and void***. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable. La. R.S. § 23:921(A)(1)(emphasis added). One of the "exceptions" provided in La. R.S. § 23:921 states that "[a]ny person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging ***in a business similar to that of the employer*** and/or from

---

[3] Price agrees that the limited consideration and determination of the preliminary injunction ***only*** may be heard in a Court of competent jurisdiction within Potter County, Texas.

soliting customers of the employer within a ***specified parish or parishes, municipality or municipalities***, or parts thereof, ***so long as the employer carries on a like business therein***, not to exceed a period of two years from termination of employment." La. R.S. § 23:921(C)(emphasis added).

In order for a non-compete agreement to be valid, Louisiana Courts have consistently held that the agreement must strictly comply with the requirements of La. R.S. § 23:921. *Water Processing Tech. v. Ridgeway*, 618 So. 2d 533, 536 (La. App. 4 Cir. 1993); writ denied, 604 So. 2d 1002 (1992). Clearly, La. R.S. § 23:921 strictly requires that a non-compete agreement must ***specifically*** name the parishes or municipalities in which the agreement is to have effect, *Vartech Sys. v. Hayden*, 2005-2499 (La. App. 1 Cir. 12/20/06) 951 So. 2d 247; *see also Turner Professional Services, Ltd. v. Broussard*, 99-2838 (La. App. 1 Cir. 5/12/00), 762 So.2d 184, 186, *writ denied*, 00-1717 (La. 9/29/00), 770 So.2d 356. Furthermore, the statute contemplates that the parishes specified in the agreement must be parishes where the ex-employer actually has a location or customers, as the Courts have held that employers are not permitted to lock former employees out of markets in which the employer does not operate. *Vartech Sys.*, 951 So. 2d at 258; (quoting *Cellular One, Inc. v. Boyd*, 94-1783 (La. App. 1 Cir. 3/3/95), 653 So.2d 30, 33, *writ denied*, 95-1367 (La. 9/15/95), 660 So.2d 449).

Likewise, the requirements of LSA-R.S. 23:921 apply to non-solicitation agreements, as well as non-compete agreements. *Creative Risk Controls, Inc. v. Brechtel*, 01-1150 (La. App. 5 Cir. 4/29/03), 847 So.2d 20, 25, *writ denied*, 03-1769 (La. 10/10/03), 855 So.2d 353. Thus, to be valid, a non-solicitation agreement must also meet the requirements of La.R.S. 23:921 and have specific geographical restrictions on their own accord, not simply those inferred from a non-compete agreement. *Vartech Sys.*, 951 So. 2d at 258; (citing *Kimball v. Anesthesia Specialists of*

*Baton Rouge, Inc.,* 00-1954 (La. App. 1 Cir. 9/28/01), 809 So.2d 405, 410, *writs denied,* 01-3316 (La. 3/8/02), 811 So.2d 883, and 01-3355 (La. 3/8/02), 811 So.2d 886).  Because Louisiana public policy dictates that non-competes and non-solicitation agreements are to be strictly construed in favor of the employee and against the party attempting enforcement, non-solicitation clauses must be able to stand alone and provide their own specific geographical restrictions. *Vartech Sys.*, 951 So. 2d at 260.  *Water Processing Tech. v. Ridgeway*, 618 So. 2d at 536; *Pelican Pub. Co. v. Wilson*, 626 So. 2d 721, 723 (La. App. 5 Cir. 1993); *Jon Bet & Associates v. Tyer,* 550 So.2d 673, 675 (La. App. 2 Cir. 1989).

The Non-Competition and Non-Solicitation covenants in the Agreement by and between Price and Bruckner do not comply with the strict language of La.R.S. 23:951. In particular, with respect to the non-competition provision, the Agreement purports to restrict Price from engaging in any business that competes with the "Business" "within any parish North of Alexandria, Louisiana (Caddo, Bossier, Webster, Claiborne, Lincoln, Union, Morehouse, West Carroll, East Carroll, De Soto, Red River, Bienville, Jackson, Ouachita, Richland, Madison, Tensas, Franklin, Caldwell, Winn, Nachitoches, Sabine, Grant, La Salle, Catahoula and Concordia)." App'x 6. However, Bruckner only has two locations in Louisiana—Monroe (located in Ouachita Parish) and Shreveport (located in Caddo Parish)[4]. Price was the General Manager of Bruckner's Monroe location. *See* Pl.'s Verified Orig. Pet., Appl. For TRO, Temp. Inj, Perm. Inj. Order Referring Case to Arbitration p. 8.  So, Price not actually work or solicit business in any of the other Parishes listed outside of Ouachita—and there is not even a Bruckner location in many of parishes specified, which violates La.R.S. 23:951's requirement that the employer be "carrying on" a similar business in the parishes to which the employer is seeking to enjoin the former employee.  Considering this,

---

[4] See App'x 12.

the Court should deem the Non-Competition Agreement null and void.  Alternatively and at the very most, should the Court choose to strike the unenforceable language and enforce any remaining, enforceable provisions, then the Non-Competition agreement should only include Ouachita and Caddo Parishes.  *Vartech Sys.*, 951 So. 2d at 257.

Importantly, the Agreement's Non-Solicitation provision does not contain any reference to geographical restrictions—and the specified parishes listed in the Non-Competition provisions cannot be inferred to apply to the Non-Solicitation provisions.  Therefore, following the Court's reasoning and determinations in *Vartech*, the Non-Solicitation provisions of the Agreement are unenforceable and not subject to reformation—as there is no offensive or unenforceable language to strike—it is the ***omission*** of a specific geographical restriction which cause the unenforceability. *Vartech Sys.*, 951 So. 2d at 258 and 260; *see also Aon Risk Services of Louisiana, Inc. v. Ryan,* 01-0614 (La. App. 4 Cir. 1/23/02), 807 So.2d 1058, 1060-62; *Water Processing Technologies, Inc. v. Ridgeway,* 618 So.2d 533, 536 (La. App. 4 Cir. 1993).

Furthermore, while La.R.S. 23:921 does not require a definition of an employer's business for the  agreement to be valid, if the agreement contains a definition of the employer's business, it ***cannot*** be overly broad, such that it prevents former employees from engaging in more activities than were performed for the former employer. *Vartech Sys.*, 951 So. 2d at 259.  Importatntly, the Court in *Vartech* determined that "the employer is only entitled to keep ex-employees from competing with the employer's actual business, not some overblown contractual definition of business designed to cover the proverbial waterfront and keep ex-employees from being able to make a living in any segment of the ex-employer's industry. *Id*. at 259; *see also Baton Rouge Computer Sales, Inc. v. Miller-Conrad,* 99-1200 (La. App. 1 Cir. 5/23/00), 767 So.2d 763, 765. Cases which have found non-competition agreements to be void based on the definition of the

employer's business include *LaFourche Speech & Language Services, Inc. v. Juckett,* 94-1809 (La.App. 1 Cir. 3/3/95), 652 So. 2d 679, *writ denied,* 95-0850 (La. 5/12/95), 654 So. 2d 351; *Summit Inst. for Pulmonary Med. and Rehabilitation, Inc. v. Prouty,* 29-829 (La.App. 2 Cir. 4/9/97), 691 So. 2d 1384, *writ denied,* 97-1320 (La. 9/26/97), 701 So. 2d 983; and *Daiquiri's III on Bourbon, Ltd. v. Wandfluh,* 608 So. 2d 222 (La.App. 5 Cir. 1992), *writ denied,* 610 So. 2d 801 (La. 1993). In all of these cases, the business description either in the contract or in the plaintiff's petition was found to be overly broad. Hence, enforcement of the contracts in those cases would have restricted and prohibited the employees from engaging in many more types of employment than they actually held with the plaintiff-employers. *Baton Rouge Computer Sales*, 767 So. 2d at 765.

In the instant matter, the Non-Competition provision in the Agreement seeks to prohibit Price from engaging in any business or activity or "render[ing] any services or provid[ing] any advice to any business, activity, service or Person, if such business, activity, service or Person competes with the business." App'x 6. "Business" is defined ***underline broadly*** to mean "(i) the purchase, storage, transportation and distribution of fuel products and (ii) ***any other business the Company or its affiliates conducts or has specific plans to conduct*** during the Executive's employment up to his date of termination." App'x 6. (emphasis added). The Non-Competition provision further attempts to prevent Price from "assist[ing], help[ing] or otherwise support[ing] . . . any Person, business or other activity . . . to create, commence or otherwise initiate, or to develop, enhance or otherwise further, any business or activity if such business or activity competes (***or is reasonably likely to compete (as determined by the Company in its sole discretion) with the Business***." App'x 6. (emphasis added).  This definition is overly broad under Louisiana law and is therefore void.

In *Daiquiri's III on Bourbon, Ltd. v. Wandfluh*, 608 So. 2d 222, 224 (La. App. 5th Cir. 1992), writ denied, 610 So. 2d 801 (1993), the court found the non-compete agreement at issue null and void because it contained an overly broad definition of the employer's business. *Id*. at 224-225.  Similarly, in *Comet Industries, Inc. v. Lawrence*, 600 So.2d 85 (2nd Cir. 1992) and *Comet Industries, Inc. v. Colvin*, 600 So.2d 89 (2nd Cir. 1992), companion cases with facts remarkably similar to the matter at hand, the employer sought injunctions against its former employees on the basis of covenant-not-to-compete agreements which provided as follows:

> "Employee agrees that during the term of this Agreement and for a period of two (2) years thereafter, Employee shall not, anywhere within the continental United States, directly or indirectly, individually or in concert with others, or through the medium of a corporation, partnership, association, joint venture or otherwise, whether as an employee, owner, partner, representative, consultant or in any other capacity, engage in any business or represent any other company or business which supplies products or services which are similar to or are competitive with those provided at any time during the term of this Agreement by Employer."

> *Comet v. Colvin, 600 So.2d at* 89.

The Court in Comet concluded that the covenant-not-to-compete agreement involved was in contravention of La R.S. 23:921(C) in that it contains an overly broad definition of the employer's business and was therefore null and void.

Equally, the instant case illustrates the inherent problem created when the employer's business is not defined in the contract. The Non-Competition language in the Agreement merely states that Price is prohibited from engaging in a business similar to that of Bruckner or its "affiliates".  App'x 6. The nature of Bruckner's and/or its affiliates' business is not specifically described anywhere in the Agreement.  At the time of entering into the Agreement, and even at

the present time, Price had no conceivable way of knowing what "business the Company or its affiliates conducts or has *specific plans to conducts*"—the "Company" is defined in the Agreement as Bruckner Truck Sales, Inc. which includes all of Bruckner's locations nationwide[5] and the Non-competition provisions broadens that definition to include all unknown "affiliates".  App'x 6.  At the time of Price had no way of knowing what specific "business" the "Company" as a whole conducted outside the operation in Monroe, Louisiana.  Importantly, the Agreement even states that the "Executive [Price] shall serve as the General Manager ('GM') of *Monroe Mack Sales, Inc. ('Dealership')*.  App'x 1. (emphasis added).  However, the Non-Competition provisions state that Price is prohibited from competing with the "Company as defined as Bruckner Truck Sales, Inc."—it is *not* limited to Monroe Mack Sales, Inc. which is where Price was actually employed. App'x 6. Clearly, the definition of the business contained in the Non-Competition language is overly broad and accordingly, the Non-Competition agreement should be null and void.

## III.  REFORMATION IS NECESSARY UNDER TEXAS LAW

In the alternative to the arguments presented by Price regarding the Agreement's interpretation under Louisiana law, should the Court determine that Texas law controls the Agreement and does not apply Louisiana law in the instant matter, the Non-Competition and Non-Solicitation provisions contained therein are still unenforceable as written.  Under Texas law, "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made *to the extent that it contains limitations as to time, geographical area, and scope of activity* to be restrained that are *reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee*." TEX. BUS. & COM. CODE ANN. § 15.50(a)(emphasis added). Further,

---

[5] See App'x 12.  Importantly, Bruckner's "affiliates" are unknown.

> If the covenant is found to be ancillary to or part of an otherwise enforceable agreement **but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant** to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed, except that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief.

*Id.* § 15.51(c)(emphasis added).

The non-competition and non-solicitation covenants in the Agreement by and between Price and Bruckner are unquestionably unreasonable and impose a greater restraint than is necessary to protect the goodwill or any other business interest of Bruckner. In particular, with respect to the Non-Competition provision, the Agreement purports to restrict Price from engaging in any business that competes with the "Business" "within any parish North of Alexandria, Louisiana (Caddo, Bossier, Webster, Claiborne, Lincoln, Union, Morehouse, West Carroll, East Carroll, De Soto, Red River, Bienville, Jackson, Ouachita, Richland, Madison, Tensas, Franklin, Caldwell, Winn, Nachitoches, Sabine, Grant, La Salle, Catahoula and Concordia)." App'x 6.

The Texas Supreme Court has made it clear that a non-competition covenant "must ***bear some relation to the activities of the employee***. It must not restrain his activities into a territory into which his former work has not taken him or given him the opportunity to enjoy undue advantages in later competition with his employer." *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991) (emphasis added) (internal quotations omitted) (quoting *Wisconsin Ice & Coal Co. v. Lueth*, 250 N.W. 819, 820 (Tex. 1933)). As the United States District Court for the Southern District of Texas observed, "Texas courts have found that noncompetition covenants

that cover areas where the employee did not actually work or clients whom the employee did not actually serve during his employment are overbroad and unenforceable." *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 435 (S.D. Tex. 2008); *see also Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793-94 (Tex. App.--Houston [1st Dist.] 2001, no pet.) ("A covenant not to compete with a broad geographical scope is unenforceable, particularly when no evidence establishes the employee actually worked in all areas covered by the covenant.")

As stated *supra*, Bruckner only has two locations in Louisiana—Monroe (located in Ouachita Parish) and Shreveport (located in Caddo Parish).  App'x 12. Price was the General Manager of Bruckner's Monroe location. *See* Pl.'s Verified Orig. Pet., Appl. For TRO, Temp. Inj, Perm. Inj. Order Referring Case to Arbitration p. 8. Price did not actually work or solicit business in any of the other Parishes listed. Indeed, as general manager, the vast majority of his time was spent at the Monroe location managing the branch. While his position required interaction with Bruckner customers, the interaction almost exclusively took place at the Monroe location. Accordingly, a reasonable area of restriction would only include Ouachita Parish—and at very most, should only include Ouachita and Caddo Parishes. The inclusion of any other Parishes would be overbroad and would most certainly impose a greater restraint than is necessary to protect the goodwill or any other business interest of Bruckner. Therefore, should this Court find the Non-Competition provision otherwise enforceable, it should reform the provision prior to entering a temporary injunction to properly restrict the geographical area in which Price is prohibited from engaging in any competitive "Business."

In addition, the scope of the activity to be restricted in both the Non-Competition and Non-Solicitation provisions is unreasonably broad. The Non-Competition provision in the Agreement purports to prohibit Price from engaging in any business or activity or "render[ing] any services

14

or provid[ing] any advice to any business, activity, service or Person, if such business, activity, service or Person competes with the business." App'x 6. "Business" is defined broadly to mean "(i) the purchase, storage, transportation and distribution of fuel products and (ii) *any other business the Company or its affiliates conducts or has specific plans to conduct* during the Executive's employment up to his date of termination." App'x 6. (emphasis added). The Non-Competition provision further attempts to prevent Price from "assist[ing], help[ing] or otherwise support[ing] . . . any Person, business or other activity . . . to create, commence or otherwise initiate, or to develop, enhance or otherwise further, any business or activity if such business or activity competes (*or is reasonably likely to compete (as determined by the Company in its sole discretion) with the Business*." App'x 6. (emphasis added). Not only are these terms unreasonably broad, but, based on the language of the provision, it is **impossible** for Price to know what activity or activities he is prohibited from conducting.

In non-competition provisions, the scope of activity to be restrained should be no broader than the scope of the actual business conducted by the employee on behalf of the employer. *See Diversified Human Res. Grp., Inc. v. Levinson-Polakoff*, 752 S.W.2d 8, 11 (Tex. App.—Dallas 1988, no writ)(holding noncompetition agreement unenforceable without reformation where agreement attempted to restrict employee from engaging in any recruitment service, instead of merely restricting employee from recruiting data processors, which was the true nature of her employment with her previous employer). There are many overly broad restraints outlined in the Non-Competition provision. First, the restriction on creating or commencing businesses or activities that compete "or is reasonably likely to compete (as determined by the Company in its sole discretion)" is far too broad and vague. Based on the definition, Bruckner could prohibit Price from creating or commencing any business, if Bruckner decides (in its sole discretion) that the

15

activity the business conducts "is reasonably likely to compete." Thus, if Bruckner hears that Price is opening a business servicing passenger automobiles and Bruckner determines, in its sole discretion, that it may want to start servicing passenger automobiles in the future, even though it has never performed such services before, it could seek to prevent Price from opening the business.

Second, and more importantly, the definition of "Business" is incredibly broad and vague. "Fuel products"—a term that could have innumerable meanings—is undefined. As written, Price would not even be able to work for AutoZone or other, similar automotive parts retailers, as AutoZone purchases and sells fuel pumps, fuel caps, engine oil, etc.—all of which could be considered "fuel products," even though Bruckner's Monroe location does not compete with or serve the same customers as AutoZone.

Remarkably, the definition of "Business" extends even further to include "any other business the Company or its affiliates conducts or has specific plans to conduct during the Executive's employment up to his date of termination." App'x 6. Texas courts have concluded that non-competition provisions prohibiting an employee from competing in "any business that competes" is overly broad. *See U.S. Risk Ins. Grp., Inc. v. Woods*, 399 S.W.3d 295, 301 (Tex. App.—Dallas 2013, no pet.). Instead, such provisions should be limited to the type of business that the employee *actually* performed. *See id.* Here, Bruckner's Monroe location (where Price performed his duties as General Manager) primarily performs repair and maintenance services on semi-trucks and includes the sale of semi-truck parts and accessories. Moreover, during Price's employment with Bruckner and continuing to date, Bruckner's Monroe location performed repair and maintenance services almost exclusively—approximately 97%—on Mack and Volvo brand semi-trucks (the vast majority of which is warranty work on newer model years). Accordingly, should this Court find the Non-Competition provision otherwise enforceable, it should reform the

provision to restrict Price from engaging in any business or activity that competes with the Business, with "Business" defined as meaning "performing repair and maintenance warranty services on Mack and Volvo brand semi-trucks and selling or distributing Mack and Volvo products, except in connection with performing servicing work." Such a restriction would be no broader than necessary to protect the goodwill or any other business interest of Bruckner.

For similar reasons, the Non-Solicitation provision in the Agreement is patently unreasonable.[6] The Non-Solicitation provision purports to prohibit Price from (a) "tak[ing] any action to solicit or divert any business (or Potential Business) or clients or customers away from the Company or any of its affiliates" or (b) "induc[ing] customers, clients, business partners, suppliers, agents or other Persons under contract or otherwise associated or doing business with the Company or any of its affiliates to terminate, reduce or alter any such association or business with or from the Company or such affiliate." App'x 6. "Potential Business" is defined to mean "any current or reasonably foreseeable commercial activity or any current or reasonably foreseeable commercial opportunities associated with the Company's or any of its affiliates' business." App'x 6.

"Potential Business" is clearly overly broad and vague as it bears no relation to the activities of Price during his employment. *See Peat Marwick Main & Co.*, 818 S.W.2d at 387 (quoting *Wisconsin Ice & Coal Co.*, 250 N.W. at 820) ("[T]he restrictive covenant must bear some relation to the activities of the employee."). More importantly, non-solicitation clauses are generally considered overly broad and unreasonable to the extent they restrict soliciting clients with whom the employee had no dealings during his employment or who became customers of the employer after the employee left employment. *See John R. Ray & Sons v. Stroman*, 923 S.W.2d

---

[6] Non-solicitation clauses are considered restraints on trade and are governed by Tex. Bus. & Com. Code § 15.50 et seq. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011).

80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *Peat Marwick Main & Co.*, 818 S.W.2d at 388. Therefore, should this Court find the Non-Solicitation provision otherwise enforceable, ***at the very least***, it should reform the provision to prohibit Price from soliciting business only from those clients with whom he had personal contact. However, it would be more appropriate to require Bruckner to create a list of customers with whom Price had personal dealings during his employment and whom continued to conduct business with Bruckner prior to Price's alleged breach of contract. Doing so would ensure that the Non-Solicitation provision imposes no greater restraint than what is necessary to protect Bruckner's business interests, as required by TEX. BUS. & COM. CODE ANN. § 15.50(a).

## IV.  <u>NO IRREPARABLE HARM FOR HIRING FORMER EMPLOYEES</u>

On September 18, 2017, Bruckner obtained a Temporary Restraining Order against Bayou Diesel Services, LLC ("Bayou Diesel") and Price from the 251st District Court in Potter County, Texas (the "TRO").[7] The TRO purported to restrain Bayou Diesel and Price, in part, from directly or indirectly "[c]ontacting any of Bruckner's or its affiliates' employees or attempting to solicit any of Bruckner's or its affiliates' employees to terminate their employment with Bruckner or its affiliates." TRO at p.2. The TRO also purported to restrain Bayou Diesel and Price from "[v]iolating the Non-Competition and Non-Solicitation provisions of the Employment Agreement between Regan Price . . . ." *Id.* The Non-Solicitation provision of the Agreement by and between Price and Bruckner includes the following restriction: "[Price] shall not during the Restricted Period . . . contact, solicit, approach or hire any person employed by the Company or any of its affiliates or who was an employee of the Company or any of its affiliates during the one year period prior to such contact, solicitation, approach or hiring." *Id.*

---

[7] For reasons set forth in separate briefing should the Court request such, the TRO was void as entered.

To obtain an injunction on a non-competition covenant, the applicant must "plead and prove not only (1) a cause of action and (2) a probable right to the relief sought, but also (3) *a probable, imminent, and irreparable injury in the interim*." *Cardinal Health Staffing Network v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.)(emphasis added)(citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Here, Bruckner cannot demonstrate any irreparable injury that would occur by Price contacting or hiring employees or former employees of Bruckner. As currently written, Price cannot even contact an employee or former employee of Bruckner for personal reasons, unrelated to business. Certainly, Bruckner cannot demonstrate any injury that would occur from Price reaching out to his former co-workers on a collegial level. More importantly, to the extent Bruckner's employees terminate their employment with Bruckner on their own accord—without suggestion or prompting by Price— with the intention of going to work for another employer or Bruckner terminates their employment, it is difficult to imagine how Bruckner could be irreparably injured by Price hiring them. These former employees could have and, in some cases, did go to work for any other competitor. App'x 13-25; *see also Custom Drapery Co. v. Hardwick*, 531 S.W.2d 160, 162, 166 (Tex. Civ. App.— Houston [1st Dist.] 1975, no writ)(upholding trial court's decision to deny a temporary injunction seeking to enjoin the new employers of employees with non-competition agreements in place with previous employer from employing the employees and noting that  the trial court could have concluded from the evidence that the former employees would have left their former employer's employ and engaged themselves in competitive employment independently of any inducement on the part of new employers). Thus, to succeed in obtaining an injunction on the Non-Solicitation provision in the Agreement, as written, Bruckner must prove that it will suffer irreparable injury

by Price contacting or hiring its employees or former employees—a burden it simply will not be able to meet.

## V.  NO INJUNCTION SHOULD BE ENTERED AGAINST DEFENDANT BAYOU DIESEL

Bruckner filed its Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Order Referring Case to Arbitration (the "Original Petition") against Defendants Bayou Diesel Services, LLC (Bayou Diesel) and Price, individually, on September 15, 2017, in the 251st District Court of Potter County, Texas. On October 11, 2017, Defendant Bayou Diesel filed its Special Appearance to Present Motion Objecting to Jurisdiction (the "Special Appearance"), challenging personal jurisdiction over Bayou Diesel on the grounds that Bayou Diesel (1) is not a resident of Texas; (2) is not required to maintain and does not maintain a registered agent for service in Texas; (3) does not now engage, nor has it ever engaged, in business in Texas; (4) has not committed any tort, in whole or in part, within the state; (5) does not maintain a place of business in Texas and has no employees, servants, or agents within the state; (6) has no substantial connection with Texas arising from any action or conduct of Bayou Diesel purposefully directed toward Texas; and (7) the exercise of jurisdiction in Texas would offend traditional notions of fair play and substantial justice. *Def. Bayou Diesel Services, LLC's Special Appearance to Present Motion Objecting to Jurisdiction* at p. 2.

Subsequently, Defendants removed this case to the United States District Court for the Northern District of Texas, subject to and without waiving Bayou Diesel's Special Appearance. *Defs.' Notice of Removal* p.1, ECF No. 1. To date, Bayou Diesel's Special Appearance has not been ruled upon by the Honorable Judge Mary Lou Robinson and has not been referred to the Honorable Magistrate Judge Lee Ann Reno. *See Order Denying Motion for Referral and Ordering Briefing*, ECF No. 13.

Because Bayou Diesel has challenged Texas courts' personal jurisdiction over it and the Court has not yet ruled on the issue of personal jurisdiction, it would be inappropriate for the Court to enter an injunction against Bayou Diesel. *See, e.g.*, *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543, (3d. Cir. 1967)("[P]reliminary matters such as defective service, personal jurisdiction and venue should be raised and disposed of before the court considers the merits quasi-merits of a controversy."); *Chrisman Mill Farms, LLC v. Blazer*, Civ. A. No. 5: 17-011-DCR, 2017 U.S. Dist. LEXIS 59579, at *8–*9 (E.D. Ky. Apr. 19, 2017) (holding that defendant's Motion to Dismiss based on lack of jurisdiction must be resolved before issuing a preliminary injunction); *Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711 (N.D. Iowa 2005) ("Before delving into the issue of whether a preliminary injunction is appropriate in this instance, the court must first determine whether it has personal jurisdiction over [defendants]."); *Cadman v. Bond*, 603 F. Supp. 1335, 1336 (D. Mass. 1985) ("Before addressing the merits of plaintiffs' claim for preliminary relief, it is necessary to resolve the jurisdictional issue."). Accordingly, Defendant Bayou Diesel respectfully requests that this Court decline to enter an injunction against it, while its challenge to the Court's jurisdiction is pending.

## CONCLUSION AND PRAYER

For the reasons stated herein, Defendant Regan Price requests that the Court deny Plaintiff's Motion for Preliminary Injunction.

Dated: November 2, 2017.

Respectfully submitted,

STIBBS & CO., P.C.

By: /s/ *Stuart Lapp*
Stuart Lapp
State Bar Number: 11946100
819 Crossbridge Drive

21

Spring, Texas 77373
Telephone: (281) 367-2222
Facsimile: (281) 681-2330
slapp@stibbsco.com

**ATTORNEY IN CHARGE FOR
DEFENDANTS**

OF COUNSEL:
Courtney Bryan Sheaffer
State Bar Number: 24072005
csheaffer@stibbsco.com
STIBBS & CO., P.C.
819 Crossbridge Drive
Spring, Texas 77373
Telephone: (281) 367-2222
Facsimile: (281) 681-2330

<u>**CERTIFICATE OF SERVICE**</u>

   I certify that a true and correct copy of this *Defendant Regan Price's Brief in Response to Plaintiff's Motion for Preliminary Injunction* has been forwarded to all known counsel of record via the Court's CM/ECF notification system on this 2nd day of November, 2017.

Shawn D. Twing stwing@mhba.com
Mark Logston mlogston@mhba.com
MULLIN HOARD & BROWN, L.L.P.
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656

       /s/ *Stuart W. Lapp*
       Stuart W. Lapp