IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BRUCKNER TRUCK SALES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:17-CV-0204 |
| | § | |
| BAYOU DIESEL SERVICES, LLC, and | § | |
| REGAN PRICE, Individually, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**TO GRANT IN PART, DENY IN PART PLAINTIFF'S "MOTION FOR INJUNCTION"**
**and TO DENY PLAINTIFF'S "MOTION FOR TEMPORARY RESTRAINING ORDER"**

The issue before the Court in this diversity case, removed from state court, is two-fold:

first, whether Texas or Louisiana law applies to an agreement between two of the three parties;

and second, whether plaintiff is entitled to injunctive relief based on alleged violations of that

agreement.

I.
PROCEDURAL HISTORY

Plaintiff Bruckner Truck Sales, Inc. ("Plaintiff" or "Bruckner"), a Texas corporation

headquartered in Amarillo, Potter County, Texas, sued defendant Regan Price ("Price"), a former

Bruckner employee and resident of Monroe, Louisiana, individually, and defendant Bayou

Diesel Services, LLC ("Bayou Diesel "), a limited liability company created by defendant Price

pursuant to the laws of the State of Louisiana.  [ECF 1-3 at 2].[1]  Plaintiff asserted breach of

---

[1]Defendant Bayou Diesel filed a Special Appearance in the state court action objecting to that court's jurisdiction and, upon removal, has reasserted the objection in this federal case.  [ECF 1-7 at 1-5, 12 at 1-2].  The jurisdictional issue, however, has not been referred to the undersigned and remains pending before the United States Senior District Judge.

contract, breach of fiduciary duty, defamation of business entity, and tortious interference with

contractual and business relationships causes of action.  Plaintiff specifically pleaded breach of

non-competition and non-solicitation provisions set forth in an Employment Agreement ("EA")

executed between plaintiff and defendant Price.  [ECF 1-3 at 4].[2]  Plaintiff alleged it terminated

the employment of defendant Price who later, in direct violation of the EA, established a

competing business, defendant Bayou Diesel, a truck parts and service business located in

Monroe, Louisiana.  [ECF 1-3 at 2].  Plaintiff originally filed suit in state court in Potter County,

Texas, pursuant to the terms of the EA.  On October 11, 2017, defendants removed the case to

this Court.  [ECF 1].

Plaintiff's initial state court pleading was entitled, "Plaintiff's Verified Original Petition

and Application for Temporary Restraining Order, Temporary Injunction, and Permanent

Injunction, and Order Referring Case to Arbitration."  [ECF 1-3].  Upon defendants' October 11,

2017 removal of the case, two of plaintiff's requests for relief were independently docketed as a

"Motion for Injunction" and a "Motion for Temporary Restraining Order."  On October 12,

2017, the United States Senior District Judge referred these two motions to the undersigned "for

a hearing, if necessary, and for determination."  [ECF 4].  Consequently, the undersigned will

address plaintiff's requests for relief as docketed and referred, to wit:  as plaintiff's "Motion for

Injunction" and "Motion for Temporary Restraining Order."

On October 20, 2017, plaintiff moved the Court to set a hearing on its "Application for

Temporary Injunction."  [ECF 6].[3]  The undersigned held an evidentiary hearing on November 8,

2017, at which all parties and their counsel were present, and presented evidence and argument.

---

[2]The parties do not dispute that defendant Bayou Diesel was not a party to the EA.  Plaintiff, however, has asserted "alter ego/civil conspiracy" theories of liability [ECF 1-8 at 1-2] arguing Bayou Diesel is Price's alter ego thereby establishing personal jurisdiction over Bayou Diesel.  [ECF 28].

[3]The state district court granted a Temporary Restraining Order ("TRO") on September 18, 2017.  That TRO expired by its own terms on October 2, 2017, prior to defendants' removal. [ECF 1-4 at 3].  Although independently docketed as a motion upon removal and subsequently referred to the undersigned, plaintiff, upon removal, has not re-urged such motion.  As the issues therein appear to be identical to those sought in the preliminary injunction, the undersigned has not separately addressed the motion for a TRO other than to recommend that it be denied as moot.

II.

FACTUAL BACKGROUND

On or about August 6, 2014, Bruckner entered into a Stock Purchase Agreement ("SPA")

to purchase from sellers Randall L. Price and Judy Price Cole,

> all of the issued and outstanding shares of stock (the "Shares") of Monroe Mack
> Sales, Inc., a Louisiana corporation d/b/a Louisiana Kenworth of Monroe,
> Louisiana Truck Supply (the "Company"), which owns and operates a truck
> dealership in Monroe, Louisiana, franchised by Mack Trucks, Inc., Kenworth
> Truck Company, and Volvo Trucks North America, a division of Volvo Group
> North America, LLC (individually a "Manufacturer" and collectively, the
> "Manufacturers").

[ECF 1-3 at 29, Recitals; Plaintiff's Hearing Exhibit #1 at 4, Recitals, emphasis removed].[4]  The

SPA's "Procedure at the Closing" section contained an agreement between Bruckner and the

sellers regarding Bruckner's continued employment of defendant Price:

> Buyer and Regan Price ("Price") will execute and deliver an employment
> agreement (the "GM Employment Agreement") pursuant to which Buyer shall
> employ Price as General Manager of the Company's truck dealership for a term of
> one year, and on such other terms and conditions as are mutually agreeable to
> Buyer and Price.

[ECF 1-3 at 29, Art. 1.7; Plaintiff's Hearing Exhibit #1 at 4, Art. 1,7, emphasis removed].

Pursuant to that agreement, Bruckner and Price entered into the EA.  The EA began on

the "Effective Date" and continued "for a period of one (1) year ending on the anniversary of the

execution of this Agreement . . . ."  [ECF 1-3 at 18, Plaintiff's Hearing Exhibit #2 at 1].  The EA

originally attached to the state court pleadings was only signed by Price. Additional attachments

to the EA were submitted at the evidentiary hearing.  The Effective Date is marked out on the

copy provided to the Court except for the year, 2014, and there is no execution date.  At the

---

[4]Plaintiff attached the original SPA, dated August 6, 2014, to its state-court pleading, which defendants filed in the United States District Clerk's record upon removal.  [ECF 1-3 at 29-50].  The signature page of that document contains only Brian Bruckner, President's signature.  [ECF 1-3 at 50].  At the November 7, 2017 evidentiary hearing, however, plaintiff presented, and the Court introduced, Plaintiff's Exhibit #1, an Amended and Restated Stock Purchase Agreement ("ARSPA") dated March 5, 2015. The ARSPA submitted appears to be the sixth amendment to the original.  Sellers Randall L. Price and Judy Price Cole, as well as Brian Bruckner, signed the ARSPA.  [Plaintiff's Hearing Exhibit #1 at 22].  The language cited by the Court is identical in both the August 6, 2014 and March 5, 2015 agreements.

evidentiary hearing, however, both Brian Bruckner, President of Bruckner, and defendant Price

testified they *executed* the EA in September of 2014, a statement supported by a September 9,

2014 Bruckner/Price e-mail submitted to the Court.  [Plaintiff's Hearing Exhibit #2].

Bruckner hired Price to be the general manager of Monroe Mack Sales, Inc. in Monroe,

Louisiana ("Monroe Mack").  Price testified he went on Bruckner's payroll in March of 2015.[5]

Price testified that in March of 2016, when he presumably became an at-will employee under the

terms of the EA, he inquired of Chris Bruckner (Brian's brother and Price's direct supervisor)

whether the parties needed a new employment contract and was told one was not necessary.

Price testified Bruckner subsequently fired him from Monroe Mack in January of 2017.  Price

further testified he decided to open his own business in May of 2017, that he formed Bayou

Diesel the same month, and that he registered the business with the Louisiana Secretary of State.

Price used his home address as the LLC's domicile and mailing addresses because he did not yet

have a business location.  [Plaintiff's Hearing Exhibit # 3].  Price testified that Bayou Diesel

began operating its business on September 6, 2017.

Plaintiff contends Price's actions violated the Non-Competition and Non-Solicitation

clauses of the EA, which stated:

> 9.  <u>Non-Competition and Non-Solicitation</u>.  The Executive acknowledges that in
> the course of the Executive's employment with the Company, the Executive will
> become familiar with the Company's and its affiliates' trade secrets and with
> other Confidential Information concerning the Company and/or its affiliates and
> that the Executive's services will be of special, unique and extraordinary value to
> the Company and its affiliates.  In consideration of the foregoing and for other
> good and valuable consideration and as a material inducement to the Company to
> enter into this Agreement, the Executive agrees that:
>
> a.  <u>Non-Competition</u>.  The Executive shall not, while the Executive is employed
> by the Company and for two (2) years after the date of any termination (the
> "<u>Restricted Period</u>"), directly or indirectly, engage, without the prior express
> written consent of the Company, within any parish North of Alexandria,
> Louisiana (Caddo, Bossier, Webster, Claiborne, Lincoln, Union, Morehouse,
> West Carroll, East Carroll, De Soto, Red River, Bienville, Jackson, Ouachita,

---

[5]This date is consistent with the most recent March 5, 2015 ARSPA.

Richland, Madison, Tensas, Franklin, Caldwell, Winn, Nachitoches, Sabine, Grant, La Salle, Catahoula and Concordia), in any business or activity, whether as a proprietor, member, partner, investor, shareholder, director, officer, employee, consultant, independent contractor or in any other individual, corporate or representative capacity, or render any services or provide any advice to any business, activity, service or Person, if such business, activity, service or Person competes with the Business.  For purposes of this Agreement, the *"Business" shall mean (i) the purchase, storage, transportation and distribution of fuel products and (ii) any other business the Company or its affiliates conducts or has specific plans to conduct during the Executive's employment up to his date of termination.*  In addition, the Executive shall not, during the Restricted Period, assist, help or otherwise support, without the Company's prior express written consent, any Person, business or other activity, whether as an employee, consultant, partner, principal, agent, representative, director, stockholder, or in any other individual, corporate or representative capacity, to create, commence or otherwise initiate, or to develop, enhance or otherwise further, any business or activity if such business or activity competes (or is reasonably likely to compete (as determined by the Company in its sole discretion)) with the Business. Notwithstanding the foregoing, the Executive shall not be prohibited during the Restricted Period from being a passive investor where the Executive owns not more than 1% of the outstanding capital stock of any publicly-held company.

b.   <u>Non-Solicitation</u>.  The Executive shall not during the Restricted Period, (i) *take any action to solicit or divert any business (or Potential Business) or clients or customers away from the Company or any of its affiliates*, (ii) *induce customers, clients, business partners, suppliers, agents or other Persons under contract or otherwise associated or doing business with the Company or any of its affiliates to terminate, reduce or alter any such association or business with or from the Company or such affiliate* or (iii) contact, solicit, approach or hire any person employed by the Company or any of its affiliates or who was an employee of the Company or any of its affiliates during the one year period prior to such contact, solicitation, approach or hiring.  For purposes of this Agreement, <u>"Potential Business"</u> shall mean any current or reasonably foreseeable commercial activity or any current or reasonably foreseeable commercial opportunities associated with the Company's or any of its affiliates' business.

[ECF 1-3 at 23, Plaintiff's Hearing Exhibit #2 at 6] (emphasis added).

Price conceded at the evidentiary hearing that his business, Bayou Diesel, had hired five (5) former Bruckner employees.  The evidence in the record is somewhat conflicting as to whether these employees were solicited by Price or whether they approached him about working for Bayou Diesel.  Bruckner had terminated at least two (2) of these employees in August 2017. Price also agreed that some, but not all, of these employees' job duties were similar to the job duties they previously performed for Bruckner.  Price testified that while Bayou Diesel worked

on diesel trucks, it also performed work on bush hogs, cars and passenger trucks; however, it did not engage in warranty work on diesel trucks, diesel truck or parts sales, other than parts used in service work.  Price testified that about 75% of Monroe Mack's work on diesel trucks was warranty work.  Price further testified that Bayou Diesel does not have a large parts inventory as Monroe Mack does.

Plaintiff seeks temporary injunctive relief to enjoin and restrain defendants Price and Bayou Diesel, "and any person in active concert or participation with them, from directly or indirectly:"

- violating the Non-Competition and Non-Solicitation provisions of the EA;

- contacting or attempting to solicit any of Bruckner's customers;

- contacting or attempting to solicit any of Bruckner's employees; and

- engaging in any business that is in competition with the business of Bruckner or its affiliates (including, without limitation Bruckner's Monroe Mack Sales Dealership) within any parish North of Alexandria, Louisiana (Caddo, Bossier, Webster, Claiborne, Lincoln, Union, Morehouse, West Carroll, East Carroll, De Soto, Red River, Bienville, Jackson, Ouachita, Richland, Madison, Tensas, Franklin, Caldwell, Winn, Nachitoches, Sabine, Grant, La Salle, Catahoula and Concordia), such business specifically being defined as the mechanic service on trucks including replacement, repair and accessories, sale of truck engine parts or accessories, delivery truck parts or accessories, sale of service contracts or warranties, service relating to repairs performed pursuant to service contracts or warranties.

[ECF 1-3 at 15] (emphasis removed).

III.
LEGAL STANDARD

A federal court sitting in diversity applies the federal standard to determine if injunctive relief should be granted.  *Mayo v. Hartford Life Ins. Co.,* 354 F.3d 400, 403 (5th Cir. 2004); *Smith v. EMC Corp.,* 393 F.3d 590, 597 (5th Cir. 2004); *TransPerfect Translations, Inc. v. Leslie*, 594 F.Supp.2d 742, 748 (S.D.Tex. 2009).  To secure a preliminary injunction enjoining

Price from breaching the non-competition and non-solicitation provisions of the EA, plaintiff must demonstrate (1) a substantial likelihood of success on the merits of its case; (2) a substantial threat that the failure to grant an injunctive order will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunctive order might cause the defendants; and (4) that the order will not be adverse to the public interest.  *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Women's Med. Ctr. v. Bell,* 248 F.3d 411, 418–20 (5th Cir. 2001).  A failure to prove any of the four elements will result in the denial of injunctive relief.  *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472 (5th Cir. 1985).

Because the parties argue that the law of different states should apply to determine the issue as to injunctive relief, determining plaintiff's likelihood of success on the merits will largely turn on which state's law applies.  As discussed herein, if Louisiana law applies to the EA, then plaintiff may have a more difficult time prevailing on this factor.  *See Waguespack v. Medtronic, Inc.*, 185 F.Supp.3d 916, 924-25 (M.D.La. 2016).

IV.
CHOICE-OF-LAW

A.  General Considerations

The diversity of citizenship between plaintiff Bruckner, a Texas corporation, and defendant Price, a Louisiana citizen, and defendant Bayou Diesel, a Louisiana limited liability company, establishes the Court's jurisdiction in this case.  Texas is the undisputed forum state herein, and the Court must apply its choice-of-law rules.  *See Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011); *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941).  There is no dispute that plaintiff and defendant Price executed the EA containing a choice-of-law and forum clause

stating:

> This Agreement shall be governed by and construed in accordance with the laws of the state of Texas, applied without reference to principles of conflict of laws. Any action relating to or arising under this Agreement must be brought in a court of competent jurisdiction within Potter County, Texas which will be the exclusive jurisdiction.

[ECF 1-3 at 26]. "Texas law generally gives effect to contractual choice-of-law provisions."

*Quicksilver,* 792 F. Supp. 2d at 951. Plaintiff seeks to enforce the EA's restrictive covenants under Texas law, as agreed by the parties, arguing the EA's choice-of-law provision is valid. To the contrary, defendant Price argues, "[A]lthough Texas courts permit choice-of-law agreements and the default position is that they are enforceable, it is possible, and not uncommon, to overcome them." [ECF 14 at 8, citing *Cardoni v. Prosperity Bank,* 805 F.3d 573, 580 (5th Cir. 2015)]. Accordingly, Price argues that the EA's choice-of-law provision is null, void and unenforceable, and that Louisiana substantive law should control the Court's decision.

## B.  Texas v. Louisiana

In determining which state's law to apply under a choice-of-law analysis, courts consistently look to the Restatement (Second), Conflict of Laws ("Restatement") to guide their analysis. A party seeking to render a contractual choice-of-law provision unenforceable must satisfy the standards of the Restatement section 187(2), which provides that:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, **or**
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of §188, would be the state of the applicable law in the absence of an effective choice-of-law by the parties.

*Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015).  In the instant case, defendant Price argues the pleadings and evidence before the Court support a finding that the application of Texas law would contravene Louisiana's fundamental policy that restraints on business should not be tolerated except in limited circumstances.  Defendant Price asks the Court to find both the competition and solicitation clauses to be null and void under Louisiana law, or alternatively reform the covenants under Texas law.  Plaintiff argues the Court should grant its requested injunctive relief as to both clauses, applying Texas law as contracted by the parties.

As discussed in *Cardoni*, the Restatement section 187(2)(b) analysis is better taken in reverse to answer whether, absent the choice-of-law provision, Louisiana law would apply. *Cardoni*, 805 F.3d at 582.  The Court must perform a "more significant relationship" determination that requires examination of the various contacts with each state.  *Id*.  Under that analysis, the Court examines the EA as to the place of negotiation, the place of performance, the location of the subject matter of the contract and the domicile, residence, nationality, place of incorporation and place of business of the parties.  *Id.*

Plaintiff argues for the application of Texas law based on its relationship to Texas. Accordingly, Texas contacts are:

- Bruckner is a Texas corporation headquartered in Amarillo, Texas that owns and operates twenty-six (26) truck dealerships in six (6) states;

- Bruckner's Amarillo headquarters include corporate management, IT, human resources and accounting/finance offices;

- Bruckner conducts on-site employee training in Texas, including the company's "Bruckner University" a one-time intensive training program for new employees, and holds quarterly management meetings primarily in Texas; and

- The EA was executed in Texas based upon the final signature of Brian Bruckner being affixed to it in Amarillo. [6]

---

[6]Defendant Price argues the EA was executed in Louisiana, but the execution actually occurred in Texas.  *See Cardoni*, 805 F.3d at 583 (citing Restatement § 188).

Defendant Price urges the Court to apply Louisiana law because of its more significant relationship with the parties and the transaction.  Louisiana contacts include:

- Price is a lifetime Louisiana citizen;

- The negotiations of the EA took place in Louisiana;

- Price's employment with Bruckner occurred in Louisiana;

- Price's EA occurred as an ancillary contract to the ARSPA which, by its terms, was to be governed by Louisiana Law, *see* ARSPA §§ 11.9 and 11.10 [ECF 1-3 at 48];

- The employees at issue are in Louisiana;

- The customers at issue are in Louisiana;

- The allegedly competing business is a Louisiana LLC operating in Louisiana;

- Plaintiff's claim of irreparable harm affects its Monroe, Louisiana location; and

- The injunctive relief sought would be enforced in Louisiana.

Based upon the foregoing, Louisiana has the more significant relationship with this case and its law would govern absent the choice-of-law provision.

Additionally, Louisiana has a materially greater interest than Texas.  *See Cardoni*, 805 F.3d at 584*; see also Exxon Mobile Corp. v. Drennen*, 452 S.W.3d 319 (Tex. 2014); *DeSantis v Wackenhut Corp*., 793 S.W.2d 670 (Tex. 1990).  Both states have an interest in protecting the expectations of the parties to the EA. Texas also has an interest in protecting one of its businesses.  However, Louisiana has an interest in its resident employee, as well as a dealership (Monroe Mack) operating in its borders, with Louisiana employees and customers.  Louisiana also has an interest in the new business (Bayou Diesel) and its employees and customers.  *See id.*

The final issue then, is whether the application of the Texas choice-of-law provision in the EA would contravene a fundamental policy of Louisiana.  While the fundamental policy analysis can be somewhat elusive in certain cases, Louisiana has a clear policy against covenants

not to compete and covenants not-to-solicit customers. A comparison of the two states proves helpful. Texas will allow certain restrictive covenants so long as they have reasonable limitations. Texas Business and Commerce Code, Section 15.50(a) sets out the criteria for enforcing covenants not to compete, stating they must be

> ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee . . .

Tex. Bus. & Com. Code § 15.50(a) (West 2017).

Louisiana law, however, taking a dim view on those trying to restrain business within its borders, has enacted its laws to state, "Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." La. R.S. § 23:921(A)(1)(West 2017). Nevertheless, Louisiana provides a narrow exceptions to the null and void rule by allowing certain contracts or agreements, or provisions thereof, to be enforceable.[7] Applicable to this case is the portion of the Louisiana statute that states:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

La. R.S. § 23:921(C) (West 2017).

In determining that the Texas choice-of-law provision contravenes the fundamental policy of Louisiana, the history of covenants not to compete, and their enforcement, in Louisiana

---

[7]To the extent plaintiff argues defendant Price expressly, knowingly, and voluntarily agreed to and ratified the non-competition clause in the EA *after* the occurrence of the incident at issue herein, thus satisfying the requirements of La. R.S. § 23:921(A)(2) (West 2017), the Court finds the claim to be unsupported by the evidence and to be without merit.

is instructive.  "A contract or agreement which prohibits an employee from competing with a former employer *consistently* has been found to be against public policy in Louisiana."  *Water Processing Technologies, Inc. v. Ridgeway*, 618 So. 2d 533, 535 (La. 1993) (citing *Kearney and Co., Inc. v. Rellstab*, 593 So. 2d 741, 747 (La. App. 4th Cir. 1992)).  The legislative history of section 23:921 reveals an intent in Louisiana to favor the employee over the employer in enforcing these agreements.  The *Water Processing* Court explained:

> The legislative enactment of the policy in 1934 as § 23:921 was modified first in 1962 to allow enforcement of limited non-competition agreements for those employers incurring an expense in the training of the employee or in advertising the employee's association with the business. In 1989, this single exception was replaced, as detailed above, to permit non-competition agreements between [a variety of business relationships]. In each statutory scheme, however, any exception to the prohibition against non-competition agreements has been specifically restricted in time, and generally, geographical area.

> Cases which have interpreted the current law have held that "public policy requires that *covenant not to compete agreements 'must be strictly construed in the employee's favor.'* "

618 So. 2d at 536 (*citing Daiquiri's III On Bourbon, Ltd. V. Wandfluh*, 608 So. 2d 222, 224 (La. App. 5th Cir. 1992, *quoting Jon Bet & Associates v. Tyer*, 550 So. 2d 673, 675 (La. App. 2nd Cir. 1989) (emphasis added).

V.
ANALYSIS OF THE PROVISIONS IN THE EA

A.  Covenant Not to Compete

The Court will apply Louisiana law to the covenant not to compete between plaintiff and Price.  As a starting point, such a covenant is null and void, unless it can fit into one of the narrow statutory exceptions. *Id.*  In contrast to Texas law, Louisiana law does not authorize reformation; however, the Court can strike any unenforceable language.  *See Vartech Sys. v. Hayden*, 951 So. 2d 247, 256 (La. App. 1st Cir. 2006) (excise [of] the offending language from the non-compete clause without doing undue damage to the remainder of the provision [is

allowed]).  Although the EA contains a severability clause, through which the Court could strike

certain provisions, other provisions of the EA are so overbroad that striking these provisions

leaves the Court with no relevant actions to enjoin under the covenant.  There are overarching

drafting issues contained within the covenant not to compete and its description of Bruckner's

business.

More specifically, the EA's geographic provision is overbroad, listing multiple parishes

north of Alexandria, Louisiana.  However, the evidence before the Court shows plaintiff has a

dealership in only three of the parishes – Ouachita (the Monroe dealership), Caddo and Bossier

(the Shreveport dealership).  Pursuant to Louisiana law, the Court could strike the remaining

parishes where Bruckner does not own a dealership.  *See Waguespack v. Medtronic, Inc.,* 185

F.Supp.3d 916, 929 (M.D.La. 2016) (statutory geographic limit has two components –

specifically named parishes and parishes where the "employer actually carries on a like

business").  While the "Restricted Period,"[8] does not run afoul of the Louisiana statute's two-

year time limit, the separate extension provision, found in paragraph 9.e. of the EA, does.  [ECF

1-3 at 24, Plaintiff's Hearing Exhibit # 2 at 7].  Again, although the Court could strike the

extension paragraph, this would not make the covenant enforceable under Louisiana law.

The definition of plaintiff's "business," contained in the covenant not to compete, is

troubling and overbroad, rendering it unenforceable by the Court.  Any attempt at striking

language from the covenant leaves the Court with no actions to enjoin without the Court

rewriting the covenant.  The EA defines plaintiff's business as "(i) the purchase, storage,

transportation and distribution of fuel products and (ii) any other business [Bruckner] or any of

its affiliates conducts or has specific plans to conduct during [Price's] employment up to his date

of termination."  There is no evidence before the Court that either Bruckner or Price engages in

the "purchase, storage, transportation and distribution of fuel products."  The remaining language

---

[8]The EA defines the Restricted Period as two years after the date of Price's termination.

of the non-competition clause is generic and does not specifically define Bruckner's business, but first merely states that Price is restricted from engaging in any business Bruckner conducts or made plans to conduct while it employed Price.  The EA goes further and restricts Price from assisting, helping or otherwise supporting a variety of persons in any business activity if such activity either competes or is reasonably likely to compete with Bruckner as determined by Bruckner in its sole discretion."  [ECF 1-3 at 23, Plaintiff's Hearing Exhibit #2 at 6].  Under Louisiana law, such language is overbroad.  As one court stated, an "employer is only entitled to keep ex-employees from competing with the employer's actual business, not some overblown contractual definition of business designed to cover the proverbial waterfront and keep ex-employees from being able to make a living in any segment of the ex-employer's industry." *Vartech Systems*, 951 So. 2d. at 259 n.15.

To be valid, a non-compete agreement must specifically define the employer's business. *LaFourche Speech & Lang. Servs., Inc. v. Juckett,* 652 So. 2d 679, 681 (La. App. 1st Cir. 1995). That opinion referenced a description of the employer's business in its pleadings when the actual employment agreement lacked any such description of that business; however, the *LaFourche* court declined to import the description found in the pleadings into the employment agreement. *Id.*  In doing so, it noted that the description in the employer's pleadings was overbroad and restricted the employee from more types of work than that which she actually performed for the employer.  *Id*.  Thus, that court did not need to address whether, under Louisiana's strict view of non-competition clauses, a court would be permitted to use what would arguably be a self-serving description in an employer's pleading to save an otherwise void agreement.  The undersigned declines to do so as well, particularly given Louisiana's prohibition on courts reforming agreements by rewriting them.  Stated another way, the undersigned "refuses to be placed 'in the business of either saving or writing a contact that is not generally favored by law.'"  *Lobrano v. C. H. Robinson Worldwide, Inc.,* 2011 WL 52602 (W.D.La. 2011) (citing

*L&B Transport v. Beech,* 568 F. Supp.2d 689, 693-94 (M.D.La. 2008); *see also Brand Energy Sol'tns., LLC v. Gilley,* 2017 WL 238917 at \*7 (W.D. La.2017).

Instead, the Court is left with the description in the EA as to plaintiff's business. Paragraph 9.a.(i) of the EA contains such a description; unfortunately, it does not comport with any of the evidence before the Court about plaintiff's actual business.  Accordingly, the Court finds plaintiff would not have a substantial likelihood of prevailing on the merits based on the seemingly incorrect contractual description of its business.  Thus, the undersigned need not explore the other elements of injunctive relief and recommends the denial of the requested injunctive relief as to the covenant not to compete portion of the EA.

## B.  Covenant Not-to-Solicit

As stated above, to determine the likelihood of success on the merits, courts look to the standards provided by the substantive law, which in this case is Louisiana.  *Valley v. Rapides Parish Sch. Bd.,* 118 F.3d 1047,1051 (5th Cir. 1997); *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990).  The non-solicitation provision in the EA pertains not only to solicitation of plaintiff's "clients or customers," but also to plaintiff's employees. [ECF 1-3 at 23-24, ¶ 9.b., Plaintiff's Hearing Exhibit #2 at 6].

As to the solicitation of "clients or customers" the EA states:

[Price] shall not during the Restricted Period, (i) take any action to solicit or divert any business (or Potential Business) or clients or customers away from [Bruckner] or any of its affiliates, (ii) induce customers, clients, business partners, suppliers, agents or other Persons under contract or otherwise associated or doing business with [Bruckner] or any of its affiliates to terminate, reduce or alter any such association or business with or from [Bruckner] or such affiliate . . . .

*Id*.  The non-solicitation provision does not contain any geographical limitation as required by the applicable Louisiana statute.  *See* La. R.S. § 23:921(C).  Such omission is fatal.  The covenant not to compete immediately preceding the non-solicitation clause in the EA contains a

geographical limitation to the Northern parishes of Louisiana, but the non-solicitation clause contains no such restrictions.  Louisiana cases have declined to *rewrite* covenants in order to make them comply with the geographic limits required by statute.  It is clear that section 23:921(C) requires the restricted parish or parishes to be "specified" in a non-solicitation clause. *Vartech Systems*, 951 So.2d at 260.  "While geographic limits may be inferred from the limits of the non-compete clauses in the non-competition agreements, we decline to *reform* the non-solicitation clauses pursuant to the savings clauses in favor of the [employer]."  *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F.Supp.2d 521, 532 (E.D. La. 2007) (citing *Vartech Systems*, 951 So. 2d at 260).

As described above, Louisiana law makes a distinction between striking language from a non-solicitation clause under the savings clause of the contract and adding language or "rewriting" the non-solicitation clause to make it comply with section 23:921(C).  Here, the undersigned finds the EA's non-solicitation clause can only comply with Louisiana law if the Court rewrites the clause to have geographical limitations specific to the non-solicitation intents of the parties, which cannot be inferred from the language contained in the covenant not to compete.  Consequently, that portion of the non-solicitation provision found in paragraph 9.b.(i) and (ii) of the EA is null and void under Louisiana law. The undersigned recommends the denial of the requested temporary injunction as to the non-solicitation of clients and customers as contained in the EA.

Although the non-solicitation of clients and customers portion of the EA is null and void under Louisiana law, the EA's non-solicitation of "employees" language in paragraph 9.b.(iii) falls outside the scope of the Louisiana statute governing non-compete and non-solicitation agreements.  Thus, it must be examined separately for reasonableness as to scope and duration. *See* La. R.S. § 23:921; *O'Sullivan v. Gupta*, 2017 WL 3438349 (E.D.La. 2017) (citing *Smith, Barney, Harris Upham & Co., Inc. v. Robinson*, 12 F.3d 515, 519 (5th Cir. 1994); *Emergency*

*Staffing Solutions, Inc. v. Morehouse Parish Hosp. Serv. Dist. No. 1*, 2011 WL 201202, * 3 (W.D.La. 2011), *amended on other grounds*, 2011 WL 1337371 (W.D.La. 2011*); CDI Corp. v. Hough*, 9 So. 3d 282, 292 (La. App. 1st Cir. 2009).

The language in the EA pertaining to solicitation of employees provides:  "[Price] shall not during the Restricted Period . . . (iii) contact, solicit, approach or hire any person employed by [Bruckner] or any of its affiliates or who was an employee of [Bruckner] or any of its affiliates during the one year period prior to such contact, solicitation, approach or hiring."  [ECF 1-3 at 23-24, ¶ 9.b.(iii), Plaintiff's Hearing Exhibit. #2 at 6].  The time limit of two years is reasonable.  *See Emergency Staffing Solutions,* 2011 WL 201202, at * 5 (finding that, although La. R.S. § 23:921 did not apply, the one-year duration of the non-solicitation clause was reasonable in light of the statute's two-year requirement).  Additionally, the scope of the provision at issue is reasonable, as it prohibits Price from soliciting or hiring only a small group of people, *i.e.*, those employed by Bruckner within a specified time frame.  *See CDI Corp.*, 9 So. 3d at 292.  The undersigned recommends that the provision regarding non-solicitation of employees contained in the EA be found valid under Louisiana law.

1.  Injunction analysis as to non-solicitation of employees

Because the portion of the EA as to non-solicitation of employees is valid under Louisiana law and the two-year time frame and scope are both reasonable, plaintiff must first show a substantial likelihood of prevailing on the merits to be entitled to injunctive relief.  *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Women's Med. Ctr. v. Bell,* 248 F.3d 411, 418–20 (5th Cir. 2001).  The uncontroverted hearing testimony is that Price now employs five (5) employees who all used to work at Bruckner within the year prior to Price hiring them.  Thus, the evidence establishes that Price has breached that part of the EA.  Bruckner has shown a serious likelihood of prevailing as to that portion of the EA.

As to the second factor, plaintiff also has shown irreparable injury if the temporary injunction is not granted.  The EA states that Price's breach will cause Bruckner irreparable injury.  [ECF 1-3 at 24, Plaintiff's Hearing Exhibit #2 at 7].  This is some evidence of such harm; however, such a recital is not controlling of the irreparable harm inquiry.  *Henson Patriot Ltd. Co. v. Medina*, 2014 WL 4546973 at * 4 (W.D. Tex. 2014) (citing *Smith, Bucklin & Assocs., Inc. v. Sonntag*, 83 F.3d 476, 481 (D.C. Cir. 1996)).  In addition to such a recital in the EA, Price now employs five of Bruckner's former employees.  Chip McDonald, Bruckner's HR Director, testified that its Monroe Mack location employs about 15-17 employees, but is currently understaffed.  If Price were allowed to solicit and/or hire those remaining employees, it would certainly impact Bruckner negatively.  Mr. McDonald further testified that he found it impossible to calculate Bruckner's loses due to not having these employees, several of whom were veteran diesel mechanics and very skilled and efficient at their jobs.  *See TransPerfect Trans. Inc. v. Leslie*, 594 F. Supp.2d 742, 757 (S.D. Tex. 2009); *cf. Criterion Brock, Inc. v. Aguirre*, 2011 WL 2517319 at *4 (S.D. Tex. 2011).

Under the third factor, the Court considers the balancing of the harm as between the parties.  While the limit on not soliciting or hiring the remaining employees could impact Price negatively, the harm to Bruckner in losing even more employees outweighs that to Price, particularly given the fact that a large part of Bayou Diesel's workforce seems to be in place and that the business appears to be operating, as indicated by the hearing testimony.  Additionally, the group of employees that Price may not solicit (Bruckner employees) is a limited number.  The hearing testimony revealed there are other diesel truck mechanic businesses in the Monroe area; thus, Price still has an available labor pool from which to hire new employees, if needed.  However, the risk that Price could solicit even more Bruckner employees to fill future employment needs outweighs any harm to Price.

Finally, granting the preliminary injunction preventing Price from soliciting Bruckner employees will not disserve the public interest.  Louisiana public policy does not prohibit restrictions on ex-employees hiring away fellow employees of the former business.  Further, the public maintains not only an interest in knowing that legally binding agreements between parties will be enforced, but also an interest in understanding that persons who breach those agreements cannot profit or benefit from such conduct.  *See Corporate Relocation, Inc. v. Martin*, 2006 WL 4101944 at *18 (N.D. Tex. 2006). Thus, the undersigned recommends Bruckner be granted a temporary injunction as to the non-solicitation of employees, as found in the EA.

VI.
CONCLUSION

Based on the foregoing, the undersigned finds that Louisiana law applies to the EA, despite the choice-of-law provision contained therein.  The Court could reform the covenant not to compete portion of the EA by striking the offending portions as to time limitations and geographic restrictions.  However, the EA does not define Bruckner's business in such a way that it has a substantial likelihood of prevailing on the merits as to the activities from which Price should be restricted.  Thus, Bruckner is not entitled to injunctive relief as to the covenant not to compete.

The covenant not-to-solicit clients and customers portion of the EA is null and void due to it not containing a specific geographic limitation, and Bruckner is not entitled to injunctive relief as to that portion of the covenant not-to-solicit.  However, the covenant not-to-solicit employees portion of the EA is reasonable and is enforceable under Louisiana law.  Further, Bruckner has proven that it is entitled to injunctive relief as to that portion of the EA upon payment of a bond.

Therefore, having considered the motions, the briefing, and the hearing evidence, as well as having conducted the above analysis applying the applicable law, the undersigned concludes plaintiff's "Motion for Injunction" should be granted to the following extent:

Defendant Price and any person or entity in active concert or participation with Price[9] should be enjoined until January 18, 2019, or until further order of the District Judge, from directly or indirectly contacting, soliciting, approaching or hiring any person currently employed by Bruckner or who was employed by Bruckner during the one-year period prior to such contact, solicitation, approach or hiring.  Further, plaintiff should be required to post with the United States District Clerk either cash or a bond (in a form approved by the Clerk) in an amount determined by the Senior District Judge.  Any further relief sought in plaintiff's "Motion for Injunction" should be denied.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States Senior District Judge that plaintiff's "Motion for Injunction" docketed October 11, 2017 be GRANTED IN PART, DENIED IN PART as set forth above, and that plaintiff's "Motion for Temporary Restraining Order" be DENIED as moot based on the Court's ruling on injunctive relief.

## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions

---

[9]As noted above, the Court is aware of the pending motion by defendant Bayou Diesel contesting personal jurisdiction, which is currently before the Senior District Judge.  [ECF 1-7].  Plaintiff alleges an alter ego theory in its supplemental pleading (filed originally in state court prior to removal).  [ECF 1-8].  Defendant Bayou Diesel contends that the alleged lack of personal jurisdiction and the pending motion prohibit entry of a temporary injunction against it.  Based on the language in Rule 65 of the Federal Rules of Civil Procedure, the Court has recommended the entry of a temporary injunction only against Price, as described herein.  While defendant Bayou Diesel is not named specifically in that recommendation, it is the opinion of the undersigned that the broad language of Rule 65 prevents defendant Price from using Bayou Diesel to do that which he cannot do directly.

and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED November 21, 2017.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

CIVIL\FCRs\Bruckner-204.TempINJ:1